UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Brenda F. Hardiman,                                        Case No. 3:15-cv-1259

        Plaintiff

    v.                                                         MEMORANDUM OPINION

Commissioner of Social Security,

        Defendant

Plaintiff Brenda F. Hardiman appeals the decision of an Administrative Law Judge ("ALJ") denying her application for disability insurance benefits and supplemental security income. Following a referral pursuant to Local Rule 72.2(b)(1), Magistrate Judge Thomas M. Parker issued a Report and Recommendation, recommending I affirm the Commissioner's final decision and dismiss Hardiman's complaint. (Doc. No. 19). Hardiman timely filed objections to Magistrate Judge Parker's R & R. (Doc. No. 20). Defendant filed a response, standing on the merits of her brief. (Doc. No. 22). For the reasons stated below, I overrule Hardiman's objections and adopt Magistrate Judge Parker's conclusions in the R & R, though I do so, in part, for different reasons.

### I. STANDARD

A district court must conduct a *de novo* review of "any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *See also Norman v. Astrue*, 694 F. Supp. 2d 738, 740 (N.D. Ohio 2010).

1

The district judge "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Heston v. Comm'r Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). Where the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

## II.     ANALYSIS

There are no objections to the background and administrative record of the case. I therefore adopt that part of Magistrate Judge Parker's R & R in full. (Doc. No. 19 at 1-13).

Hardiman objects to the portions of the report and recommendation addressing (1) the ALJ's failure to accord weight to Timothy Valko, M.D.'s signature on nurse practitioner ("NP") David Bingham's opinion; and (2) the adequacy of the ALJ's explanation for discounting NP Bingham's opinion. (Doc. No. 20). I will begin by addressing Plaintiff's second objection.

### A. Opinion of NP Bingham

Hardiman contends "[t]he rules require that the opinion evidence of a nurse practitioner be weighed under the same factors as those used to weigh opinion evidence from an examining source." (Doc. No. 20 at 7). She takes issue not with whether the ALJ gave an explanation for the weight he assigned the opinion of NP Bingham, but with "whether [the ALJ's] explanation was adequate under Social Security's own rules and regulations." (Doc. No. 20 at 5).

In considering an application for supplemental security income and disability insurance benefits, the Social Security Administration ("SSA") considers all evidence it receives. 20 C.F.R. §§ 404.1520(a)(3) & 416.920(a)(3). The SSA places evidence into five categories: (1) objective medical

2

evidence; (2) medical opinions; (3) other medical evidence "from a medical source that is not objective medical evidence or a medical opinion"; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a) & 416.913(a). Included in the evidence to be considered are opinions from medical sources that are not deemed "acceptable medical sources," such as nurse practitioners. SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). While information from these sources "cannot establish the existence of a medically determinable impairment, the information may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (quoting SSR 06-03P, 2006 WL 2329939, at *2) (internal quotation marks omitted).

The ALJ is to consider opinions from acceptable medical sources and other sources using the same factors: (1) the length of the examiner's relationship with the individual claiming disability and the frequency of examination; (2) the opinion's consistency with other evidence; (3) supportability of the opinion with evidence; (4) the source's explanation of the opinion; (5) the source's specialty or area of expertise related to the individual's impairment; and (6) other factors supporting or contradicting the opinion. SSR 06-03P, 2006 WL 2329939, at *4-5; *see also* 20 C.F.R. §§ 404.1527(c), (f)(1) & 416.927(c), (f)(1) (2017) (explaining the factors to be considered as examining relationship, treatment relationship, supportability, consistency, specialization, and other factors). "Not every factor for weighing opinion evidence will apply in every case." SSR 06-03P, 2006 WL 2329939, at *5; 20 C.F.R. §§ 404.1527(f)(1) & 416.927(f)(1).

Here, the ALJ considered the opinion of NP Bingham and evaluated its consistency with the record, providing a detailed consideration of his functional assessments:

> On October 9, 2013, Mr. Bingham completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairments, which was cosigned by psychiatrist, Tim Valko. They found that the claimant would be able to remember, understand and follow directions for simple tasks less than 80 percent but more than 2/3 of the time, because she had difficulty following simple medication changes. They opined that the claimant's ability to maintain attention

3

and concentration for two-hour periods of time was less than 2/3 of the time, because the claimant had active auditory hallucinations that interfere with her ability to focus and pay attention (Exhibit 31F). The evidence of record indicates that the claimant only occasionally experienced auditory hallucinations. The claimant's treatment notes indicate that her memory/concentration was intact for short and long term (Exhibits 24F/13-26; 26F and 30F). However, the undersigned finds that the [sic] Dr. Robie opined that the claimant had mild impairments for simple tasks, due to difficulty with concentration and memory, as well as cognitive impairment, moderate impairment for complicated tasks, increasing to extreme impairment for very complicated tasks (Exhibit 11F). Therefore, the undersigned finds that the evidence of record supports that the claimant is limited to simple, routine, and repetitive tasks.

In addition, Mr. Bingham and Dr. Valko further opined that the claimant's ability to perform work activities at a reasonable pace was severely impaired and she could perform no fast or externally imposed pace and the claimant would be more than 25 percent less productive than an unimpaired worker, because the claimant moved very slow and she was hyper vigilant, due to paranoia and this slowed her activity (Exhibit 31F). The undersigned finds that the evidence from the claimant's treatment notes indicate only occasional paranoia (Exhibits 24F/13-26; 26F and 30F). Dr. Robie opined that the claimant had moderate impairment in withstanding the stress and pressures associated with day-to-day work, due to poor adaptive coping skills. The undersigned finds that the evidence of record supports that the claimant is limited to a work environment free of fast paced production requirements, involving only work related decisions with few if any work place changes.

Mr. Bingham and Dr. Valko opined that the claimant would miss more than three times per month of work, due to difficulty leaving her home (Exhibit 31F). The undersigned finds that although the claimant reported difficulty leaving her home, the evidence of record does not support this. The claimant is able to go shopping for her family with the assistance of others and she was able to attend medical appointments. They also opined that the claimant was unable to consistently interact in a manner that was appropriate to customer expectations and would not be successful in working with the public, as well as she would frequently be distracted by co-workers or would be distracting to them, because she is paranoid and fearful of people. Her behaviors are sometimes odd and would be disturbing to others. The undersigned finds that the evidence of record supports that the claimant would have some difficulty with social functioning. The claimant's treatment notes indicate that her affect and mood were consistently normal with exception of a few times when she was noted as having an anxious mood and flat affect (Exhibits 25F/13-26; 26F and 30F). In addition, Dr. Robie opined that the claimant could relate to others on a superficial basis, but she did not like to do so. She had moderate impairment if prolonged interaction is required, because of social uneasiness and disinterest (Exhibit 11F). The undersigned finds that the evidence of record supports that the claimant is limited to occasional interaction with the general public.

Mr. Bingham and Dr. Valko stated that the claimant is emotionally fragile and stated that stress caused by even routine and unskilled or low-skilled work is likely to cause

4

her to decompensate. He reported that the claimant would be likely to be successful only in a sheltered environment and stated that she had difficulty with simple household chores. He added that the claimant had only a partial response to medication and that hallucination and delusions persist and prohibit regular contact with the public (Exhibit 31F). Again, the undersigned finds that the evidence of record does not support that the claimant [sic] hallucination and delusions have persisted (Exhibits 24F/13-26; 26F and 30F). In addition, there is evidence of record that the claimant has frequently failed to take medication as prescribed and some of those times is when she experienced hallucinations (Exhibits 26F/6 and 26F/9). *The undersigned finds that the opinion and GAF assessment of Mr. Bingham and Dr. Valko are inconsistent with the evidence of record.* Therefore, the undersigned gives little weight to the [sic] Mr. Bingham's and Dr. Valko's opinions.

(Doc. No. 12 at 34-35) (emphasis added).

The ALJ thoroughly discussed NP Bingham's opinion regarding its consistency with the record. In fact, the ALJ focused significantly on pointing out inconsistencies between specific examples of NP Bingham's treatment notes and NP Bingham's subsequent conclusions regarding the severity of Hardiman's impairments and her ability to function. The ALJ also found inconsistencies between NP Bingham's conclusions and behaviors Hardiman self-reported to other physicians, such as her ability to get herself to appointments. While the ALJ could have addressed additional SSR 06-03P factors, he was not required to do so. SSR 06-03P, 2006 WL 2329939, at *5; *see also* 20 C.F.R. §§ 404.1527(f)(1) & 416.927(f)(1). All that is required is that the ALJ "generally . . . explain the weight given to opinions from" other sources. SSR 06-03P, 2006 WL 2329939, at *6; 20 C.F.R. §§ 404.1527(f)(2) & 416.927(f)(2) (stating "[t]he adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case"). This is an unexacting standard that is easily satisfied in this case.

Next, Hardiman objects to the Magistrate Judge's failure to address what she characterizes as some of the ALJ's inconsistencies. For example, she points out the ALJ's failure to "explain how occasional auditory hallucinations detracted from treating medical source opinions." (Doc. No. 20

5

at 5). She also points out that the ALJ did not believe NP Bingham's assertion that Hardiman has difficulties leaving her home, because she is able to attend medical appointments and go shopping with others' assistance, even though this is "not inconsistent" with a treating source's opinion. (Doc. No. 20 at 5). The ALJ, however, is not required to directly address "every piece of evidence submitted by a party" or to "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006). And as stated above, the ALJ met his requirement to consider NP Bingham's medical opinion.

Finally, Hardiman objects to the Magistrate Judge's finding regarding the ALJ's comparison of NP Bingham's opinion to that of consultative examiner Dr. Robie. (Doc. No. 20 at 6). Hardiman claims the ALJ gave more weight to Dr. Robie's opinion because Dr. Robie found fewer restrictive limitations. (Doc. No. 20 at 7). Contrary to this assertion, the ALJ found Dr. Robie's opinion to be consistent with the overall record and, as such, afforded it great weight. Hardiman further points out that NP Bingham's opinion is not due less weight simply because NP Bingham is not an acceptable medical source. (Doc. No. 20 at 6). This is true. But, because NP Bingham is not an acceptable medical source, his opinion is not entitled to any special consideration. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). As such, the ALJ did not err by affording NP Bingham's opinion less weight than another medical opinion he found to be more consistent.

Based on the above, I find the ALJ appropriately considered NP Bingham's opinion. Accordingly, I adopt Magistrate Judge Parker's recommendation pertaining to Hardiman's second objection.

**B. Dr. Valko's Signature**

Plaintiff also argues the ALJ committed reversible error by failing to accord weight to Dr. Valko's signature on NP Bingham's opinion. (Doc. No. 20 at 2-4). Magistrate Judge Parker states

6

the ALJ had no duty to accord any weight to Dr. Valko's signature, because there is no evidence the two worked as a "team." (Doc. No. 19 at 21). I disagree with the Magistrate Judge's analysis but reach the same conclusion.

Regardless of whether NP Bingham and Dr. Valko worked as a team, the fact Dr. Valko signed NP Bingham's opinion should have been considered by the ALJ as a factor tending to support the opinion. 20 C.F.R. § 404.1527(c)(6). *See Phillips v. Comm'r of Soc. Sec.*, No. 1:07-CV-675, 2008 WL 4394274, at *3 (W.D. Mich. July 2, 2008) ("[A] doctor's signature on the opinion letter by the nurse practitioner is meaningful; at the very least, the doctor's decision to co-sign a letter from a nurse practitioner indicates an agreement with the opinions expressed in the letter"); *see also Brock v. Colvin*, No. 2:10-CV-00075, 2013 WL 4501333, at *6 (M.D. Tenn. Aug. 22, 2013) ("[A doctor's] signatures on [a nurse practitioner's] Assessment and medical progress notes bolster the assertion that [the nurse practitioner's] Assessment is well-supported").

I find the ALJ's error harmless, however, because, as stated above, even with his failure to consider assigning weight to the signature, his explanation still meets SSR 06-03P's requirements. *See* SSR 06-03P, 2006 WL 2329939, at *5-6.

### III. CONCLUSION

For the reasons stated above, Hardiman's objections are overruled and I adopt Magistrate Judge Parker's recommendation that I affirm the Commissioner's final decision.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge